## Lawson, etc. v. Commonwealth.

(Decided October 8, 1914.)

### Appeal from Whitley Circuit Court.

1. Burglary—House Breaking—Evidence—Refusal of Peremptory Instruction.—In a prosecution for house breaking, the peremptory asked by appellants was properly refused, even though the proof failed to show a breaking in, the circumstances indicating that a thief entered through an open window, but carried out the things stolen through a door which he broke open.

2. Burglary—House Breaking—Section 1162 Ky. Statutes.—Entry by breaking is not a requisite of our statute, the statute covering the offense without regard to the sequence of the breaking.

3. Burglary—House Breaking—Evidence.—Upon a trial of Crit and Greene Lawson for house breaking, while the wife of Crit was not a competent witness in his behalf, Greene Lawson was entitled to the benefit of her evidence, and she should have been permitted to testify for him with a caution that her testimony should be considered only to the extent that it might affect the case of Greene Lawson.

ROSE & POPE for appellant.

JAMES GARNETT, Attorney General, R. T. CALDWELL, Law Clerk, for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing as to Greene Lawson and affirming as to Crit Lawson.

The appellants, Crit Lawson and Greene Lawson, were indicted and convicted for house-breaking and sentenced to the penitentiary one to five years. The indictment was returned on the 18th day of February, and

charges that on the 16th day of February, Crit and
Greene Lawson, "did unlawfully, wilfully, feloniously,
and forcibly break open and into the dwelling house
owned by Joe Perkins, and in the possession of A. Saw-
yer, and used as a dwelling house, and did take, steal
and carry away flour and lard of value therefrom, etc."

The case was set for trial February 21st. Appellants
sought a continuance on account of absent witnesses, and
in support of it filed their affidavit showing that Jim
Carr and Alonzo Satterfield, if present, would swear that
bad feelings existed between the defendants and Nathan
Sullivan, alleged chief witness for the Commonwealth,
and Carr would also swear that just after the defendants
were arrested, he heard Nathan Sullivan talking and in
that way, "learned that through the instrumentality of
said Nathan Sullivan, and others, and by either them
directly or through them by their connivance, that the
flour, lard and other property said to have been obtained
by breaking into the out house, controlled by Anthony
Sawyer, was carried from said out house to near the
home of Crit Lawson, at least, some of same, and placed
there for the purpose of afterward instituting this prose-
cution against said Crit Lawson. * * * I do not know
exactly from said conversation and said statement of
said Nathan Sullivan at said time, it was done through
his or others' procurement."

The trial being at the indicting term, the Common-
wealth admitted the truth of the affidavit, subject to com-
petency and relevancy. Toliver v. Commonwealth, 104
Ky., 760.

The Commonwealth did not introduce Nathan Sulli-
van in chief. Defendant in offering his evidence in chief
asked to have read the affidavit. The appellants say that
the court erred to their prejudice in refusing. It will be
noticed that the affidavit was directed at Nathan Sulli-
van, "a chief witness for the Commonwealth," and he
was not introduced. It undertakes to show bad feelings
between the accused and this Sullivan. Such testimony
ordinarily goes to affect the credibility of a witness, and
that state of feeling was freely admitted in this case, al-
though Sullivan had not been introduced. As to the
carrying of the lard and flour to Crit Lawson's place, in
order to cast suspicion upon him, and cause his arrest
and prosecution, the witness does not say that Sullivan
did it, or that he heard him say he did it, or had it done.

He heard Sullivan in a conversation, and in that way "learned" some one had done this through Sullivan's instrumentality. It is not substantive or tangible evidence that the offense was committed by another than Lawson. He does not relate the conversation. The affidavit amounts to no more than a conclusion of the witness without the facts as a basis for it. The defendants proved by certain witnesses that on the night the offense was committed, they met Sullivan near to Lawson's house, and going in the direction of it, carrying a can of lard on his shoulder. Then the Commonwealth introduced in rebuttal Nathan Sullivan, and he denied that he carried any lard that night in the direction of Crit Lawson's house. The defendant did not ask him anything about the statements in the affidavit for continuance, nor did they then or afterwards offer to read the affidavit.

The appellants insist that the court should have given a peremptory instruction in their favor, because the proof failed to show a breaking in. The lard and flour was in a two-room house, into which Sawyer expected to move in a few days. The barrel of flour was against the front room door and held it fast. The partition door stood open. The rear or kitchen door was latched, and also fastened with a peg at the floor. There was an open window in the front room. There was a trail of flour leading from the barrel at the front door through the open partition door, and out the kitchen door. When the theft was discovered, the kitchen door was latched, and fastened at the floor as usual. These circumstances indicate that the thief entered through the open window, stole the floor and lard, opened and carried it out through the kitchen door, then closed and fastened it from the inside, and made his exit through the open window. It may be said that there was no proof of a "breaking in," and defendants, therefore, argue that as it takes a breaking in to constitute the offense of burglary, the case fails for want of proof. On this proposition the question is, whether under our statute the offense is committed if in stealing articles the house is either broken into or broken out of.

Section 1162 of the Kentucky Statutes with reference to this matter, says:

"If any person  *  *  *  shall feloniously break any dwelling house  *  *  *  and feloniously take away anything of value  *  *  *."

Section 1164 says:

"If any person shall feloniously * * * break any warehouse * * * with intent to steal or shall feloniously take therefrom or destroy any goods, etc., etc."

Section 460 of the Statute provides as follows:

"The rule of common law, that statutes in derogation thereof are to be strictly construed, is not to apply to this revision; on the contrary, its provisions are to be liberally construed with a view to promote its objects, * * * *."

The breaking and the stealing are the two ingredients of this offense, as described by the statutes above referred to, and the purpose of the law was to punish theft of goods from such houses. The moral wrong is done when the two elements appear, without regard to which was done first. Giving to the statutes that construction required by Section 460, we are of the opinion that, if the goods be stolen, it is immaterial whether the theft be accomplished by breaking in or by breaking out. Proof of breaking of some sort is essential. Breaking is established in the mere turning of a knob, or opening of a latched door, but whether that breaking occurs before or after the theft does not alter or lessen the degree of the offense. When the thief opened the kitchen door he broke the house, although it was a breaking out.

Entry by breaking is not a requisite by our statute. Under the English common law the old offense was committed by breaking and entering, and it was then held that it was not an offense to enter without breaking, and afterwards break out in order to make an escape. To obviate this, the statute of 12 Anne, was enacted, in which it was declared that one was guilty of burglary, if he broke out of a house with intent to commit a felony, so that today in England the offender is prosecuted under the common law if he breaks in, and by statute if he breaks out. Some American States have enacted special statutes making it burglary to break out, but in our opinion, the Kentucky Statute was written to cover the offense without regard to the sequence of the breaking. It is only necessary that the house be broken.

Second Bishop's New Criminal Law, Eighth Edition, in Section 100, sub-section 2, in speaking of this English Statute, uses this language:

"The date of this statute of 12 Anne is 1713, too recent to be absolute common law in all our states. Yet anywhere it must have weight as declaratory of the opinion of the English Parliament upon the earlier common law. As to which common law no distinct reason appears for holding it to be burglary to break into a dwelling-house to commit felony, and not burglary to get in by stealth and break out to escape; in other words, for invariably requiring the breaking to precede the entry, and never permitting it to follow. Probably in most of our states the question is settled by the express or implied terms of the statutes; as in Georgia, where the words are "breaking and entering into," the consequence whereof is that a breaking out is not adequate in this State."

The wording of our statutes does not require the entry to be by breaking; hence, we conclude, the lower court rightly refused to give defendants a peremptory instruction.

The next error complained of is that the wife of Crit Lawson was not permitted to testify. After the goods were stolen, search warrant was procured, and under it officers proceeded to search the home of Crit and Greene Lawson. Two witnesses, who accompanied the officers, did not go to the house, but waited a distance of two hundred yards until the search was completed. They swear that as soon as the officers entered the house, they saw a woman leave it from the rear, and carry something to a place near the pig-pen. The officers say they did not know a woman left the house but they went to the pig-pen and found the lard. The wife of Crit Lawson was offered as a witness, and when her testimony was refused, an avowal was made that she would swear she did not leave or carry anything out of the house. She was not a competent witness in behalf of her husband, Crit Lawson, but his co-defendant, Greene Lawson, was entitled to the benefit of her evidence, and the court should have permitted her to testify with a caution to consider it only as it might affect the case of Greene Lawson. Thompson v. Commonwealth, 1 Met., 13; Dovey v. Lam, 117 Ky., 19.

For this reason the case must be reversed as to the appellant, Greene Lawson, but as to Crit Lawson, the judgment is affirmed.