·STATE, Respondent, *v.* FISHER et al., Defendants; QUILLIAM, Appellant.

(No. 7,832.)

(Submitted February 16, 1939.   Decided March 10, 1939.)

[88 Pac. (2d) 53.]

*Mr. Harry Meyer,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. Carl N. Thompson,* Assistant Attorney General, for the State, submitted a brief; *Mr. Thompson* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

The defendant was convicted in the district court of Silver Bow county of the crime of grand larceny. From the judgment the conviction and the order denying his motion for a new trial the defendant appeals.

From the transcript it appears that the defendant Quilliam and his co-defendant, one James Fisher, met the complaining witness, Morey Vanino, in the city of Butte on the evening of August 11, 1937; that these three started to make the rounds of several drinking places; that during the course of the evening they drank a great deal of intoxicating liquor, and that Vanino drank considerably more than the others. During the course of the evening Fisher and Quilliam left the drinking place they were in at the moment and brought back a girl by the name of Irene Lasilla, an acquaintance of Fisher and a stranger to Vanino up to that time. Some time after midnight and after the complaining witness was considerably under the influence of intoxicating liquor, the defendants Quilliam and Fisher secured a room for him. Vanino, with the others named, went to the room, and, after some conversation, Quilliam and Fisher left the room leaving the girl with Vanino. The two men walked across the street to a saloon and in about fifteen minutes returned to the room, claiming that they had heard the girl scream for help. Fisher and Quilliam testified that the girl was partially disrobed when they returned, which Vanino denied. There is conflict in the testimony as to the condition of the complaining witness' attire. Vanino testified that when the defendant and Fisher entered the room they told him that he was in for some trouble, as the girl was only 17; that Fisher struck him; that Quilliam pinned his arms behind his back, and that Fisher took his wallet from his trousers pocket, extracted $60 from it and then put the wallet back in his pocket. While this was going on, the girl put on her clothes. Fisher, the girl and the defendant then left the room and Vanino followed after them, shouting for the police. Quilliam and the girl were picked up

by a merchant policeman, and Fisher was arrested some time later.

Fisher and the defendant Quilliam were tried together, no demand having been made for separate trials. Vanino testified to substantially the things set out above. Fisher and Quilliam both took the stand and testified to materially the same things as Vanino, except that they denied taking any money from Vanino, and denied that they knew he had any money or that they had any thought of trying to take any money from him. On cross-examination Fisher and the defendant were examined as to prior statements they were supposed to have made to the deputy county attorney. Fisher was also convicted, but only Quilliam appeals.

It is difficult to determine from the brief and argument just what error on the part of the district court is claimed. We conclude from our study, however, that the chief arguments of the defendant are that the court erred in allowing the examination of his co-defendant, Fisher, as to statements he was alleged to have made to the deputy county attorney, and in denying defendant's motion to have that testimony stricken, that the instruction of the court as to the testimony was erroneous as not distinctly stating how this evidence was to be considered by the jury, and that forms of separate verdict as to each defendant should have been given the jury.

Fisher was called by the defense to testify, not only in his own behalf, but also on behalf of defendant Quilliam. In his testimony he denied the taking of the money Vanino alleged was taken from him. He denied any plan on the part of the defendants to rob Vanino. On cross-examination the state questioned Fisher as to a certain statement supposed to have been made by him to the deputy county attorney the morning of his arrest. The gist of this statement, as testified to by the stenographer who was present at the time the statement was made and who reduced it to writing, was that the defendants planned to get Vanino drunk; that after he had become intoxicated they were to take his money, and that they took his wallet from him and extracted the money from it. Fisher admitted making a

72

statement, and in reply to most of the questions asked concerning specific questions and answers, he replied that he might have given the answer but explained the statement by saying he was sick and "rummy" at the time. His testimony as to the reason for making the statement is as follows:

"Q. Were you requested to make a statement as to what transpired in the early morning of that day? A. Yes sir; you asked me to make that statement.

"Q. Was that statement made voluntarily by you?

"Mr. Ybarra: Objected to as leading and calling for conclusion of the witness. The Court: Sustained.

"Q. We will withdraw the question. Was any promise made to you with reference to your making this statement? A. You told me it would be easier on me. You yourself told me.

"Q. What would be easier on you? A. If I came out and told the truth and answer the questions. I just threw it out anyway. * * * ." (Then followed some questions as to intimidation, and Fisher testified there was none.)

"Q. What caused you to make those statements? A. You asked me and told me it would be easier on myself and I was sick and rummy and had no sleep that night and I figured the best way to do was throw them out and get some sleep.

"Q. The statement was made of your own free will? A. Well, what I can remember. * * *

"The Court: Mr. Fisher, were you given any promise of immunity or reward for making this statement? Did they tell you they wouldn't prosecute you? A. I was just told it would be easier on me. * * * "

Counsel for defendant contends that no proper foundation was laid for the testimony on examination of the defendant Fisher as to the statement, since the statement was not a voluntary one. This argument might be well taken if the statement were introduced as a confession. There are many cases in many jurisdictions dealing with this matter of inducement in securing confessions. Some states have held in situations such as this that the statement could not be introduced as a confession. The statement here, sufficient as a confession, was introduced, not

as a confession but for the purpose of laying a foundation for impeaching the witness. For that purpose the same foundation need not be laid as in the case where a statement is introduced as a confession. We need not decide here the question of inducement, as for the purpose of impeachment the statement would be admissible even though it were based on such inducement as would make it inadmissible as a confession.

This court, in the case of *State* v. *Broadbent,* 27 Mont. 342, 71 Pac. 1, 2, held that the trial court did not commit error in admitting a statement made by one co-defendant for the purpose of impeaching him as a witness even though the statement had been excluded earlier as a confession. The trial court based its refusal to admit it in the case in chief for the reason that the statement was induced by a promise of bail and thus not a voluntary statement. The cause was sent back for retrial on other grounds, including inconsistent and confusing instructions, but the court said in discussing the matter of the co-defendant's statement as affecting the other co-defendant: ''As to the effect of the testimony relating to admissions or confessions made by Broadbent implicating his codefendant Donaldson, and made outside of the hearing of the latter, the court instructed the jury not to consider them as against Donaldson. Apart from the seeming inconsistency between this instruction and instruction numbered 16, which shows the sole purpose for which such admissions or confessions were admitted, the court was correct in so instructing the jury, and we find no error in this behalf prejudicial to the defendant Donaldson; but, on the other hand, the court might have gone farther, and charged the jury that, so far as such testimony had any tendency to affect the credibility of Broadbent as a witness, it did affect his codefendant Donaldson in so far as it might impeach Broadbent, who was not only a witness in his own behalf, but was a witness for Donaldson.''

*State* v. *Broadbent,* supra, is exactly in point in the present case and is controlling as to the point of the admission of the statement of the one co-defendant for the purpose of impeaching him as a witness for himself and for Quilliam. The two de-

74

fendants were tried together and from the record it appears that Fisher was as much Quilliam's witness as his own. (See, also, *State* v. *Mills*, 91 N. C. 581.) In *People* v. *Goodwin*, 105 Cal. App. 122, 286 Pac. 1087, the confession of an accomplice, though not corroborated and for that reason inadmissible in evidence as a confession to convict defendant, was held admissible for impeachment where the accomplice had been called as a defense witness. (See 16 C. J., sec. 1462, p. 714.)

We fail to see that Quilliam's substantial rights were injured by the admission of the testimony as to Fisher's prior statement. Fisher was given every opportunity to explain the statement and all the surrounding circumstances. Counsel for the state took particular pains to see to it that the jury understood exactly what inducement was offered Fisher for making the statement. In considering it for impeachment purposes the jury, it is assumed, would consider all of these things very carefully to determine whether Fisher was telling the truth at the time he made the statement or on the stand at the time of the trial.

We do not, in passing on this question, hold that the statement of Fisher was not admissible as a confession as being improperly induced, nor that it could not be used as a confession of an accomplice against Quilliam as being uncorroborated. It is not necessary to pass on these matters here for the reasons given above, and we do not pass on them.

The court instructed the jury as to the testimony concerning Fisher's statement in Instruction No. 24, as follows: "You are instructed that any statements made by the defendants concerning the commission of the offense with which they were charged are not to be considered by you as being confessions, but were introduced by the prosecution in this case solely for the purpose of impeaching the witness on the stand concerning such previous statement." The instruction is plain and understandable, and adequately instructs the jury that the statements can be considered for the purpose of impeachment, but not as confessions. No error was committed by the court

in giving the instruction, and no further instruction was needed to cover the matter of the statements.

Proposed Instructions numbered 28, 30, 31, 32 and 36 were offered by the defendant, apparently on the theory that the statements testified to for impeachment purposes were intro- duced as confessions. Since they were not, the proposed in- structions were properly refused.

Error is claimed because the court refused to give to the jury ▪ a form of verdict that would allow the conviction of one of the defendants and the acquittal of the other. Counsel for defendant offered no instruction covering this point. If such a verdict were proper, the duty rested on the defendant to offer an instruction covering that situation. A situation like this was discussed by the Georgia court in *Welborn* v. *State,* 116 Ga. 522, 42 S. E. 773, 774: "There was no request on the part of either of the defendants that the trial judge should instruct the jury as to the circumstances under which they might make a separate finding as to either one of the defendants. They were indicted as joint perpetrators of the offense [rape] charged. They did not choose to sever. They were tried together under evidence which was practically the same as to each. Had either of the defendants desired an addition to the charge which was given, he should have requested it. Having failed to do so, we cannot rule, under the facts, that the judge's failure so to charge was error." (*Morgan* v. *State,* 117 Ind. 569, 19 N. E. 154.)

What was said in the Georgia case above is applicable here. ▪ Fisher and Quilliam were informed against as the joint perpetrators of the larceny. They did not choose to sever. The evidence as to each was almost exactly the same. The submis- sion of separate verdicts, without a careful instruction to the jury as to what findings would warrant separate verdicts, would be error. Under the testimony here the court could not have submitted separate verdicts even though an instruction on the point had been tendered. The general rule is that where two persons on a joint trial before the same jury are being tried for an offense not in its nature joint, one may be convicted and the

other acquitted if the evidence warrants that result. That rule depends entirely on the evidence in the particular case. The exception is well stated in *Davis* v. *State,* 75 Miss. 637, 23 So. 770, 941, as follows: ''But where there is but one witness, and his testimony equally affects both, it is simply impossible that a different result can be legally reached as to the two. If there were two witnesses as to one and one as to the other, or if the testimony of a sole witness went further against one than the other, the jury might convict the one and acquit the other, or disagree as to him, because there the evidence does not equally affect both, and credibility of the witnesses is for the jury.'' The court goes on to restate the rule allowing acquittal of one and conviction of the other, and then says: ''They may, but when? Only when the evidence warrants it. They may believe one witness, and disbelieve another. They may accept circumstances against positive testimony. Where there is the slightest difference in the testimony, as between the two, they, weighing that testimony, may make the difference. But in a case like this, where the whole testimony is that of a single witness, in every particular the same against one as the other, it is not legally possible that a verdict which distinguishes is a response to the evidence.''

The situation in the Mississippi case seems to us to be the same as in the present case. The testimony on which these defendants were convicted was the testimony of Vanino. His testimony was the same as to both. The testimony of the defendants themselves as to the activities of the evening and all of the surrounding circumstances was the same as to each. Quilliam did not by his testimony attempt to put himself in a different position than that in which we find Fisher, nor did any other witness attempt to do so; he did not attempt to explain that Fisher was the principal and he the accessory, or that he was overcome by Fisher, or in any way indicate that even though Fisher were guilty, he should be acquitted. What was said in the Mississippi case applies in this case, and we so hold. The Mississippi case was cited with approval in *State* v. *Haynes,*

83 Wash. 660, 145 Pac. 634. (See, also, 16 C. J., sec. 2591, p. 1104, and *People* v. *Munroe*, 190 N. Y. 435, 83 N. E. 476.)

The court committed no error in denying defendant's motion to dismiss the information so far as defendant Quilliam was concerned, nor in refusing his proposed instruction No. 29. There was ample testimony, if the jury believed it, upon which to convict Quilliam of the crime charged. All of the evidence shows a concerted plan by the co-defendants and concerted action on their part.

Instructions numbered 14, 15 and 16 correctly state the law ▆ and were properly given. They are statutory definitions of the crime of larceny and its degrees. In his objections to these instructions, particularly Nos. 15 and 16, counsel, basing his contention upon the fact that there is some testimony in the record to the effect that the money taken amounted to only $40, and not $60 as charged in the information, insists on limiting grand larceny to cases where the amount taken exceeds $50, and ignores the provisions· of our statute which make the taking from the person grand larceny no matter what the amount is that is taken. (Rev. Codes 1935, sec. 11371.) There is no testimony of any kind indicating that the money in question was taken from any place except the person of Vanino. If there was a larceny at all, it was a taking from the person and so grand larceny. Also, for that reason, proposed Instruction 33 was properly refused. This proposed instruction limited grand larceny to those cases where the amount taken exceeded $50.

Instruction No. 17 is the usual instruction to the effect that ▆ persons aiding and abetting in the commission of the crime are principals, and was properly given.

Proposed instruction No. 34, is as follows: "You are instructed that the fact that the defendants herein were present and had the opportunity of committing the offense with which they are charged merely raises a suspicion of their guilt and is wholly insufficient to convict." No error can be predicated on the court's refusal to give this instruction, since by instructions already given the court adequately instructed the jury as to the presumption of innocence and necessity for proof

beyond a reasonable doubt, and by other instructions adequately protected the defendant's substantial rights.

Proposed instruction numbered 35 dealt with motive, and was ▇ not a necessary instruction under the testimony.

The judgment and order appealed from are affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, STEWART and ANGSTMAN concur.