751 P.2d 178

**Javier AGUILAR, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

**No. 17057.**

Supreme Court of New Mexico.

Jan. 11, 1988.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Public Defender, Santa Fe, for petitioner.

Hal Stratton, Atty. Gen., Tracy Hughes, Asst. Atty. Gen., Santa Fe, for respondent.

## OPINION

RANSOM, Justice.

Javier Aguilar (defendant) was convicted of the commercial burglary of Dexter Hardware. This conviction was affirmed by the court of appeals. We granted certiorari. The defendant raises five issues in his petition for certiorari. We address only one, whether the defendant's confession should have been suppressed as involuntary. As to that issue, we reverse the opinion of the court of appeals and remand for a new trial, disallowing the admission of the confession. As to the remaining issues, we find them either to be without merit or rendered moot by our disposition of the case.

On the night of November 9, 1985, after discovering a broken window at Dexter Hardware, a police officer entered the premises, found the defendant and arrested him. The next day, Dexter Chief of Police Carlos Barela read defendant his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant read and signed an advice of rights waiver.

Chief Barela said he read and explained the *Miranda* warning to the defendant prior to questioning him and the Chief thought the defendant understood what was being said. Chief Barela had known

the defendant for several years; he knew that the defendant's family had had problems with the defendant and that the defendant had been committed to the New Mexico State Hospital. Chief Barela acknowledged that he encouraged the defendant to confess to the Dexter Hardware burglary by assuring him that a confession to the crime would be taken into favorable consideration by everyone concerned. Chief Barela further admitted having told the defendant that the police had found the perpetrator's fingerprints at the scene of the burglary, although no fingerprints were introduced at trial. Finally, Chief Barela admitted having implied that, if the defendant did not confess, the defendant could be charged in connection with unrelated incidents of vandalism in Dexter.

Chief Barela explained on cross-examination: "[W]hat I intended to convey to him was that if I had to work and the D.A.'s had to put a lot of work into it, this would not be good." The defendant confessed.

Defendant has a history of mental illness. He was diagnosed as suffering from paranoid schizophrenia. In the eighteen months preceding his arrest, he was twice committed to the New Mexico State Hospital suffering from both visual and auditory hallucinations. At the time of his arrest, the defendant was on a discharge plan from the state hospital that required him to take antipsychotic medication daily and to attend weekly mental therapy counseling. In addition, defendant's I.Q. of seventy placed him on the borderline of mental retardation.

Frank Everitt, a forensic evaluator, opined that the interrogation would have been stressful to the defendant, possibly causing him to act impulsively. Further, Everitt testified that due to the defendant's subnormal intelligence and his mental illness, defendant more than likely had difficulty in appreciating the meaning of Chief Barela's assurances and in distinguishing whether a deal had been made. The defendant stated to Everitt that he thought the Chief of Police was promising him a "good deal."

■ The appropriate standard of review applicable to coerced confession claims is adequately set out in the court of appeals opinion. As there stated, appellate courts have a duty to examine the entire record and the circumstances under which the confession was made, and to make an *independent determination of the ultimate question of voluntariness.* See, e.g. *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958). Accordingly, New Mexico has adopted the "totality of the circumstances" test. *State v. Tindle*, 104 N.M. 195, 718 P.2d 705 (Ct.App.1986); *State v. Aguirre*, 91 N.M. 672, 579 P.2d 798 (Ct.App.), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978).

■ Although the court below announced the correct standard, the majority does not appear to have applied it. Rather than examine the totality of the circumstances, the court of appeals focused upon only that evidence favorable to a finding of voluntariness. *See State v. Aguilar*, (Ct. App.1987) (Bivins J., concurring in part, dissenting in part). [Opinion attached herewith to Justice Stowers' dissenting opinion.] In any event, our review on certiorari entails an independent examination of the record to determine whether evidence of voluntariness preponderates.

The court of appeals relied upon the following evidence to affirm the trial court's determination that the defendant's confession was voluntary. The defendant was no stranger to the criminal justice system. The defendant signed an advice of rights waiver. Although the defendant had a history of mental illness, his behavior during the interrogation appeared normal. The defendant's I.Q. of seventy could possibly be the result of the test being conducted in English while Spanish is the defendant's primary language. Notwithstanding his subnormal I.Q. and failure to graduate from high school, the defendant had a tenth grade reading level.

In examining voluntariness claims, we follow the three phase analytical framework set out in *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). The first phase addresses the total-

ity of circumstances surrounding the procurement of the contested confession. The second and third phases of the analysis involve the largely inferential determination of how the accused reacted to the external facts and the application of the due process standards to the court's perception of how the defendant reacted. Under these phases of the analysis, the appellate court must draw its own conclusions based on the totality of the circumstances. *Id.* at 604–06, 81 S.Ct. at 1880–81; *see also Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

██ The due process standards are that the confession must have been freely given and not induced by promise or threat. *State v. Turnbow,* 67 N.M. 241, 354 P.2d 533 (1960); *State v. Tindle,* 104 N.M. at 198, 718 P.2d at 708. The state bears the burden of establishing voluntariness. *State v. Tindle,* 104 N.M. at 198, 718 P.2d at 708. If the state fails to prove voluntariness by a preponderance of the evidence, the trial court must rule that the confession was involuntary as a matter of law. *Id.* Consequently, if the state only adduces evidence proving an equal likelihood that the confession was either voluntary or involuntary, the state has not satisfied its burden.

██ We find that the state did not meet its burden. Here, due to the subnormal intelligence and mental illness of the accused, he unquestionably had difficulty in appreciating the meaning of the assurances given to him by Chief Barela and in distinguishing whether a deal had been made. *See Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986) ("[A]s interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus."). *See also Townsend v. Sain,* 372 U.S. 293, 307–08, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963). Further, the forensic evaluator testified that the interrogation would have been so stressful to the defendant that he might have acted impulsively.

Chief Barela's interrogation alternated between threatening the defendant with charges in connection with unrelated incidents of vandalism in Dexter and assuring the defendant that a confession to the burglary would be looked upon favorably by all concerned. In the totality of the circumstances, this interrogation technique is preponderant. In comparison with all evidence to the contrary, these implied threats and promises, especially when knowingly made to a defendant with diminished mental capacity, rendered the confession involuntary as a matter of law. *See State v. Tindle,* 104 N.M. 195, 718 P.2d 705 (Ct.App. 1986).

Therefore, under the standard of review set forth above, and in view of the totality of the circumstances, we conclude that the state did not meet its burden of establishing that the confession of the defendant was freely given and not induced by promise or threat. We remand to the district court for a new trial, disallowing the admission of defendant's confession.

IT IS SO ORDERED.

SCARBOROUGH, C.J., SOSA, Senior Justice, and WALTERS, J., concur.

STOWERS, dissents.

STOWERS, Justice, dissenting.

I respectfully dissent and incorporate herein the decision of the court of appeals.

The ultimate test of voluntariness is whether the confession is the product of an essentially free and unconstrained choice by its maker. In determining whether a defendant's will was overborne in a particular case, the court must assess the totality of all of the circumstances surrounding the confession which include the characteristics of the accused and the details of the interrogation. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973); *State v. Aguirre,* 91 N.M. 672, 673, 579 P.2d 798, 799 (Ct. App.), *cert. denied,* 91 N.M. 751, 580 P.2d 972 (1978).

The court of appeals properly considered the following factual circumstances. Defendant was twenty-four years old when

questioned and had a prior criminal record. Chief Barela read defendant the *Miranda* warnings and defendant signed a written waiver form acknowledging his understanding of those warnings. Although the police officer knew defendant's family had had problems with defendant and that he had been committed to the state hospital, Chief Barela thought defendant comprehended what he was saying. There was no indication that defendant was delusional or otherwise suffering from his mental condition at the time of the interview. As a matter of fact, defendant's behavior appeared normal and he was not subjected to any prolonged interrogation. Chief Barela admitted that he encouraged defendant to confess to the burglary and implied that, if defendant did not confess, he could be charged in connection with some unrelated incidents of vandalism. On cross-examination, the Chief explained, "what I intended to convey to him was that if I had to work and the D.A.'s had to put a lot of work into it, this would not be good."

Chief Barela's statements during the interrogation did not constitute an express promise of leniency. *See State v. Tindle,* 104 N.M. 195, 199, 718 P.2d 705, 709 (Ct. App.1986). His statements that no deals were made, that the district attorney would make the final determination, that a confession to the crime would be taken into favorable consideration and that if defendant did not confess he could be charged in connection with other unrelated crimes could be classified, at most, as implied promises or adjurations to tell the truth. *See id.* at 199–200, 718 P.2d at 709–10; *Aguirre,* 91 N.M. at 674, 579 P.2d at 800. These factors do not mandate the suppression of the confession. Instead, each must be considered in determining the totality of the circumstances surrounding the confession.

The judge was required to determine whether under the above circumstances any undue influence caused an innocent person to confess falsely. *See Tindle,* 104 N.M. at 199–200, 718 P.2d at 709–10. In other words, the trial court had to consider the effect of Chief Barela's statements on defendant, given defendant's mental limitations and his possible susceptibility to the pressures of the interrogation or his inability to comprehend the circumstances. Evidence was presented by the defense that although defendant's intelligence was in the borderline range, he was not mentally retarded and in fact read English at the tenth-grade level. According to the testimony, defendant was determined to be legally sane at the time of the offense and was competent to stand trial. Finally, defendant was not subject to any prolonged questioning. Defendant's mental condition by itself without coercive police conduct casually related to the confession is no basis for concluding that the confession was not voluntarily given. *Colorado v. Connelly,* 479 U.S. 157, ——, 107 S.Ct. 515, 520, 93 L.Ed.2d 473, 482 (1986). *Cf. Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (confession involuntary where defendant subjected to four-hour interrogation while incapacitated and sedated in intensive-care unit); *Beecher v. Alabama,* 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967) (confession involuntary where police officers held gun to the head of wounded defendant to extract confession). Moreover, defendant's prior history of mental illness does not necessarily negate his ability to render a voluntary confession. Instead, it must be considered as one factor among many in determining the voluntariness of the confession.

Under the totality of the circumstances presented herein, the defendant's confession was voluntary. The state met its burden of showing a free and voluntary confession by a preponderance of the evidence. The evidence provided an adequate basis for the trial court and jury to determine the confession was not the result of a threat or improper inducement. The judgment of the district court should be affirmed.

No. 9456.

Court of Appeals of New Mexico.

April 14, 1987.

**OPINION**

GARCIA, Judge.

This is a consolidated appeal concerning two separate cases involving one defend-

**802**

ant. In one case, defendant asserts the trial court erred in refusing to suppress a confession which defendant claims was coerced. In the other, defendant seeks to challenge a sentence imposed following a plea of guilty to charges that defendant was a commercial burglar and a habitual offender. We affirm the judgments and sentences.

FACTS

On the night of November 9, 1985, a police officer in Dexter, New Mexico, saw a broken window in a commercial establishment. After requesting backup, the officer entered the store and found defendant. Defendant was apprehended after attempting to escape and resisting arrest.

The following day, after reading defendant his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)), defendant read and signed an advice of rights waiver. Dexter Police Chief, Carlos Barela, questioned defendant about a prior, unrelated commercial burglary in which defendant was a suspect. Chief Barela assured defendant that a confession to the crime would be taken into "favorable consideration by everyone concerned." He also told defendant that the district attorney would determine what crimes would be prosecuted. Chief Barela believed defendant understood what he was saying. Chief Barela stated emphatically that no deals were made and that no threats or any certainty of prosecution were conveyed to defendant. Defendant confessed to the burglary.

Defendant has a history of mental illness. He was committed to the State Hospital in Las Vegas on two occasions, one only nine months prior to the criminal offenses at issue in these appeals. He has been diagnosed as a paranoid schizophrenic with a "borderline" I.Q. of 70. However, there was testimony that defendant behaved normally during the interrogation. Frank Everitt, a forensic evaluator, testified that defendant's antipsychotic medication gives relief from the acute symptoms of schizophrenia. Moreover, Everitt testified that defendant's low I.Q. score could have been depressed by the fact that

the test was administered in English, while Spanish is defendant's primary language. Everitt conceded that there was no indication that defendant had suffered hallucinations since his last commitment to the State Hospital, nine months earlier.

Although defendant was found competent to stand trial, he subsequently moved, both before and during trial, to suppress the confession on the ground that it was involuntary. Both motions were denied. Evidence on the question was then presented at trial and the jury was instructed, pursuant to NMSA 1978, UJI Crim. 40.40 (Repl.Pamp.1982), to determine, as a factual matter, whether defendant's confession had been voluntary. The jury decided against defendant and returned a guilty verdict.

On appeal, defendant claims the trial court erred, as a matter of law, in submitting the issue to the jury. Because defendant was given *Mirandai%, warnings and because there is no claim that he involuntarily or unknowingly waived his Miranda rights, the admissibility of the confession turns on a question of whether the confession was voluntary.* State v. Tindle, *104 N.M. 195, 718 P.2d 705 (Ct.App. 1986);* see also Davis v. North Carolina, *384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).*

STANDARD OF REVIEW

We are faced initially with the need to restate the appellate standard of review applicable to coerced confession claims. We do so because the state argues that the substantial evidence test applies. Under the substantial evidence test, the appellate court must disregard all evidence contrary to the findings of the trial court and the jury that the confession was voluntary. This argument is incorrect. The substantial evidence test is not the appropriate review standard applicable to questions of voluntariness. The United States Supreme Court has consistently ruled that appellate courts have a duty to examine the entire record and the circumstances under which the confession was made, and to make an independent determination of the ultimate question of voluntariness. *See, e.g., Payne*

*v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958). The "totality of the circumstances" test has been adopted and applied in New Mexico. *State v. Tindle; State v. Aguirre,* 91 N.M. 672, 579 P.2d 798 (Ct.App.1978). Indeed, the Supreme Court has said that "the ruling of the trial court and the finding of the jury on the voluntary character of the confession do not foreclose the independent examination which it is our duty to make here." *Haley v. Ohio,* 332 U.S. 596, 599, 68 S.Ct. 302, 303, 92 L.Ed. 224 (1948).

In arguing otherwise, the state cites our decision in *State v. Boeglin,* 100 N.M. 127, 666 P.2d 1274 (Ct.App.1983). In *Boeglin,* we described the voluntariness inquiry as a mixed question of law and fact, and indicated that the substantial evidence test applied to such rulings, assuming the law was correctly applied to the facts. We note the language in *Boeglin* was dicta since it was not the basis of our ruling. Nevertheless, recognizing that the decision may have caused some confusion, we take this opportunity to clarify the law in this area.

Our discussion if *Boeglin* cited *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), a case in which the United States Supreme Court established an analytical framework for the evaluation of voluntariness claims. The first phase involves the circumstances surrounding the procurement of the contested confession. The Court recognized that evidence concerning the factual background is frequently, "if indeed not almost invariably, contradictory." *Id.* at 603, 81 S.Ct. at 1879. Accordingly, at this phase of the analysis, the Court said it would defer to the factual determination of the trial court and would "consider only the uncontested portions of the record[.]" *Id.* at 604, 81 S.Ct. at 1880.

The second and third phases of the analysis are inextricably interwoven and involve the largely inferential determination of how the accused reacted to the external facts and the application of the due process standards to the Court's perception of how the defendant reacted. In contrast to the Court's deferment under the first phase of the analysis, the appellate court in the sec-ond and third phases of the analysis must draw its own conclusions based on the totality of the circumstances. The Court stated:

> No more restricted scope of review would suffice adequately to protect federal constitutional rights. For the mental state of involuntariness upon which the due process question turns can never be affirmatively established other than circumstantially—that is, by inference; and it cannot be competent to the trier of fact to preclude our review simply by declining to draw inferences which the historical facts compel.

*Id.* at 605, 81 S.Ct. at 1880. *See also United States v. Brown,* 557 F.2d 541 (6th Cir.1977). Our statement in *Boeglin* regarding the mixed legal and factual nature of the voluntariness issue must be considered in the context of the foregoing analysis developed by Justice Frankfurter in *Culombe.*

## APPLYING THE STANDARD OF REVIEW TO OUR CASE

In applying the analysis to this case, the undisputed factual circumstances surrounding defendant's confession are as follows. Defendant was twenty-four years old and had a prior criminal record. Chief Barela read defendant the *Miranda* warnings and defendant signed a written waiver form. Chief Barela thought defendant understood what he was saying, although he had known defendant for several years and knew defendant's family had had problems with him and that defendant had been committed to the state hospital. While Chief Barela acknowledged that he encouraged defendant to confess to the burglary, defendant was not subjected to prolonged interrogation and his behavior during the interrogation appeared normal. There was no indication that defendant was delusional or otherwise suffering from his mental condition at the time of the interrogation. Finally, Chief Barela admitted having implied that, if defendant did not confess, he could be charged in connection with unrelated incidents of vandalism in Dexter. On cross-examination, Chief Barela explained, "what I intended to convey to him was that

if I had to work and the D.A.s had to put a lot of work into it, this would not be good."

Chief Barela's statements during the interrogation cannot be classified as implied threats or promises. *See State v. Tindle; see also State v. Watson,* 82 N.M. 769, 487 P.2d 197 (Ct.App.1971). Chief Barela stated that no deals were made and made it clear to defendant that the district attorney would make the final determination as to the crimes for which defendant would be prosecuted.

Moreover, even where there may be a causal connection between police misconduct and a defendant's confession, it does not automatically follow that there has been a violation of due process. *See Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Voluntariness must be proven by a preponderance of the evidence. *State v. Tindle.* The trial court was required, under the second and third prongs of the voluntariness analysis, to consider the effect of Chief Barela's statements on defendant, given defendant's mental limitations and his possible susceptibility to the pressures of the interrogation or his inability to comprehend the circumstances. *See State v. Benavidez,* 87 N.M. 223, 531 P.2d 957 (Ct.App.1975). Here, however, the state offered ample evidence to show voluntariness. While defendant has been diagnosed as suffering from paranoid schizophrenia, his illness was episodic and his behavior during the interrogation appeared normal. Although defendant has a low I.Q., he was shown to have a tenth grade reading level. Defendant's low I.Q. score could have been depressed by the fact that the test was administered in English, while Spanish is defendant's primary language.

Viewing these factors, combined with defendant's familiarity with police and court procedures, we find that the state met its burden of showing a free and voluntary confession by a preponderance of the evidence under the totality of the circumstances. The evidence provided an adequate basis for the trial court and jury to determine the confession was not the result of a threat or improper inducement and was, in fact, voluntary. *See State v. Griffin,* 148 Ariz. 82, 713 P.2d 283 (1986) (en banc); *People v. Pierson,* 670 P.2d 770 (Colo.1983) (en banc).

SENTENCE

At the sentencing hearing in Cause No. CR–85–223, defendant presented evidence that incarceration in the penitentiary would be highly detrimental to his mental well-being. In light of this evidence, defendant claims the trial court's imposition of an eighteen-month sentence was cruel and unusual punishment. However, defendant has cited no authority for his claim that the sentence is unconstitutional under the circumstances. *See In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984). An inmate's need for extraordinary medical treatment does not by itself, mean that incarceration constitutes cruel and unusual punishment. *See State v. Augustus,* 97 N.M. 100, 637 P.2d 50 (Ct.App.1981). Moreover, as argued by the state, the question of where defendant serves his sentence is a matter for the corrections department, not the trial court. Defendant's contention under this point is premature at best.

DEFENDANT'S ISSUES UNDER *STATE v. FRANKLIN*

Defendant also raises four issues under *State v. Franklin,* 78 N.M. 127, 428 P.2d 982 (1967). After reviewing and considering these issues, we find them to be without merit and decline to discuss them here.

CONCLUSION

Defendant's convictions and sentences are affirmed.

IT IS SO ORDERED.

DONNELLY, C.J., concurs.

BIVINS, J., specially concurs and dissents in part.

BIVINS, Judge (concurring in part, dissenting in part).

I agree with the majority on the sentencing and *"Franklin"* issues. I also agree with the standard of review for claims of involuntary confessions as set forth in the majority opinion. My disagreement goes

solely to the application of that standard to the facts of this case. Therefore, I would affirm in cause No. CR–85–223, and reverse and remand for a new trial in Cause No. CR–85–231.

While rejecting the substantial evidence test, the majority has, I respectfully submit, succumbed to the habit of accepting only the evidence that supports the finding of voluntariness, rather than making an independent determination and drawing its own conclusion based on the totality of the circumstances as to how the accused reacted. This is evident by the failure to recite all the facts. I will summarize the facts, including additional facts pertinent to the issue. Unavoidably, this summary includes some of the facts already set forth in the majority opinion.

Chief Barela said he read and explained the *Miranda* warnings to defendant prior to questioning him, and he "thought" defendant understood what he was saying. Chief Barela had known defendant for several years; he knew that defendant's family had had problems with him and that defendant had been committed to the New Mexico State Hospital. Chief Barela acknowledged that he encouraged defendant to confess to the burglary by assuring him that a confession would be taken into favorable consideration by everyone concerned. Chief Barela further admitted having told defendant that the police had found the perpetrator's fingerprints at the scene of the burglary, although no fingerprints were introduced at trial. Finally, Chief Barela admitted having implied that, if he did not confess, defendant could be charged in connection with unrelated incidents of vandalism in Dexter. On cross-examination, Chief Barela explained, "what I intended to convey to him was that if I had to work and the D.A.'s had to put a lot of work into it, this would not be good."

I disagree with the majority and believe Chief Barela's statements during the interrogation *can* be classified as implied threats and promises. *See State v. Tindle,* 104 N.M. 195, 718 P.2d 705 (Ct.App.1986); *see also State v. Watson,* 82 N.M. 769, 487 P.2d 197 (Ct.App.1971). These improper inducements, standing alone, might not warrant a suppression of defendant's confession. *See State v. Tindle.* However, as indicated by the majority, the trial court was required, under the second and third prongs of the voluntariness analysis, to consider also the effect of the improper inducements on defendant, given defendant's mental limitations and his possible susceptibility to the pressures of the interrogation or his inability to comprehend the circumstances. *See State v. Benavidez,* 87 N.M. 223, 531 P.2d 957 (Ct.App.1975).

Defendant was diagnosed as suffering from paranoid schizophrenia. In the eighteen months preceding his arrest, defendant was committed to the state hospital on two occasions, suffering from both visual and auditory hallucinations. On one of those occasions, defendant had set the family home on fire to prevent an attack from space aliens. On another occasion, defendant saw the devil in his mother's eyes. At the time of his arrest, defendant was on a discharge plan from the state hospital that required him to take anti-psychotic medication daily and to attend weekly mental therapy counseling.

A forensic evaluator, Frank Everitt, testified that the anti-psychotic medication prescribed for defendant acts to correct a chemical imbalance in the brain, thereby stopping the hallucinations. Everitt stressed, however, that medication does not cure schizophrenia, but only gives relief from its acute symptoms. Although there was no evidence that defendant was actively schizophrenic at the time of his arrest and interrogation, Everitt testified that individuals who are paranoid schizophrenics are "easily confused" and may suffer "carry-over symptoms, such as blocking, difficulties with judgment, and difficulties with impulse control." Everitt testified that, due to defendant's subnormal intelligence and his mental illness, defendant likely had difficulty in appreciating the meaning of Chief Barela's assurance and in distinguishing whether a deal had been made. Everitt also said he had read Chief Barela's report of the interrogation, and he believed the interrogation would have been stressful to defendant, possibly causing de-

fendant to act impulsively. Finally, Everitt testified that when he asked defendant why he made the statement to police, defendant said it was because he thought Chief Barela was promising him "a good deal." The state offered no contrary expert opinions.

When the voluntariness of a confession is challenged, the state bears a heavy burden of establishing that the confession was not extracted by fear, coercion, hope of reward or other improper inducement. *State v. Turnbow*, 67 N.M. 241, 354 P.2d 533 (1960); *State v. Tindle.* When the alleged inducements are implicit, rather than express, the trial court must consider the totality of all the surrounding circumstances, including the characteristics of the accused and the details of the interrogation. *State v. Tindle; State v. Aguirre*, 91 N.M. 672, 579 P.2d 798 (Ct.App.1978). Even when some evidence supports a finding of voluntary waiver, the finding will be reversed if it cannot be sustained by a preponderance of the evidence. *State v. Bramlett*, 94 N.M. 263, 609 P.2d 345 (Ct. App.1980). If the state fails to prove voluntariness by a preponderance of the evidence, the trial court must rule that the confession was involuntary as a matter of law. *State v. Austin*, 91 N.M. 586, 577 P.2d 894 (Ct.App.1978); *State v. Watson.*

Viewing the totality of the circumstances and according proper weight to both defendant's diminished mental capacity and the undisputed evidence of improper inducements, I find that the state did not meet its burden of showing a free and voluntary confession by a preponderance of the evidence. Defendant, in my opinion, is entitled to a new trial, free of his confession.