This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41081**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**EFRAIN BERNAL-CORRAL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Emilio Chavez, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Emily Miller, Assistant Solicitor General
Albuquerque, NM

for Appellee

Kathryn J. Hardy Law, LLC
Kathryn J. Hardy
Taos, NM

for Appellant

**MEMORANDUM OPINION**

**MEDINA, Chief Judge.**

**{1}** Following a jury trial, Defendant was convicted of criminal sexual penetration (CSP) in the second degree, contrary to NMSA 1978, Section 30-9-11 (2009); and false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963). Defendant appeals his convictions claiming that a number of errors occurred during the proceedings below. Specifically, Defendant argues that (1) his convictions for both CSP in the second degree and false imprisonment violated his right to be free from double jeopardy; (2) his

post-*Miranda* statements should have been suppressed; (3) the district court abused its discretion during voir dire; (4) the prosecutor engaged in misconduct resulting in the denial of his right to a fair trial; and (5) his trial counsel was ineffective. We affirm.

**BACKGROUND**

**{2}** The victim (Victim) in this case rented a residence managed by Defendant and his wife. The residence had a front door leading outside and a door in the bedroom that also led outside. At around 2:55 a.m. on the day of the incident, Victim heard her landlord, Defendant, knock on her bedroom window and on the bedroom door. Victim put on a pair of shorts, opened the door slightly, and asked Defendant what he wanted. While standing at the door, Defendant blamed Victim for damage to a gate, made disparaging comments about Victim, told her she would have to engage in sex with him or she would be evicted, and leaned in to kiss her neck. Victim pushed Defendant away and told him, "No." Defendant asked Victim, "Why not?" and she replied that he was married and a lot older. Defendant assured Victim his wife would not find out and then swung the door open and stepped into Victim's bedroom. Victim backed up and attempted to escape through the living room door, but Defendant blocked her exit. He again told Victim she would be evicted unless she had sex with him. Victim told Defendant that she did not "want to leave but [did not] want to have sex with [him] either." She offered to pay for the broken gate if Defendant would leave her alone. Defendant insisted she have sex with him and in response Victim tried to bargain with him. Defendant engaged the deadbolt on the door, preventing her from leaving.

**{3}** Defendant then forcefully threw Victim onto her bed and tried to force her legs apart. Victim pleaded and begged for Defendant to stop, but he did not stop. Victim told Defendant she was bleeding to which Defendant responded he did not care and ordered Victim to grab a condom or he would kill her. Victim retrieved a condom and threw it at Defendant, after which Defendant again pushed Victim onto the bed. Defendant pulled down her shorts and forcefully penetrated her. Defendant then digitally penetrated her anus. Defendant then told Victim not to tell anyone about what had happened. A jury convicted Defendant of CSP and false imprisonment. This appeal followed.

**DISCUSSION**

**I.     Double Jeopardy**

**{4}** Defendant argues that his convictions for CSP and false imprisonment are based on "a single course of conduct," and therefore, convictions for both violate his right to be free from double jeopardy. A claim that a single act resulted in multiple charges under different statutes is a "double[] description" claim. *State v. Swick*, 2012-NMSC-018, ¶¶ 10-11, 279 P.3d 747. Our review on appeal is de novo. *State v. Phillips*, 2024-NMSC-009, ¶ 9, 548 P.3d 51.

**{5}**     In addressing Defendant's double description claim, we consider whether the same conduct violates both the CSP and the false imprisonment statutes. In doing so, we consider well-established factors to determine whether Defendant's conduct in committing the offenses is "sufficiently distinct" or is unitary. *See id.* ¶ 12 (referring to the factors set forth in *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624, such as time and place, intervening events, sequencing of acts, and offender's conduct and utterances). "[N]o *Herron* factor is dispositive, but instead . . . all factors should be considered together in light of the facts and circumstances of each case." *Phillips*, 2024-NMSC-009, ¶ 13. If Defendant's conduct or acts are not unitary, the double jeopardy analysis ends, and there has been no double jeopardy violation. *See State v. Silvas*, 2015-NMSC-006, ¶ 9, 343 P.3d 616. We look to the Legislature's intent with regard to punishment only if the conduct is unitary. *Id.*

**{6}**     In support of this claim, Defendant relies on *State v. Armendariz*, a case in which the victim was asleep but awoke when someone jumped on top of her, and the defendant was convicted of false imprisonment and CSP, among other things. 2006-NMCA-152, ¶¶ 1, 13, 140 N.M. 712, 148 P.3d 798. In that case, "[w]hen [the d]efendant was on top of her . . . [the d]efendant restrained [the v]ictim and both orally and vaginally penetrated" her. *Id.* ¶ 13. The court in *Armendariz* found the defendant's conduct unitary, because "[t]he same force used to effect false imprisonment was used to commit CSP." *Id.*

**{7}**     Defendant argues that the same offenses involved in this case were involved in the *Armendariz* case, the sexual offense involving Victim in this case occurred "right away" after the restraint began, and the initial restraint of Victim did not end but continued through the sexual offense. Therefore, Defendant contends, this Court should come to the same conclusion as the *Armendariz* court and find that Defendant's conduct was unitary. We disagree with Defendant's suggestion that the defendant's conduct in the *Armendariz* case is comparable to the conduct and acts in this case.

**{8}**     As noted in *Armendariz*, "the CSP statute is designed to prevent unwanted sexual violence while the false imprisonment statute is designed to prevent unlawful restraint of any sort." *Id.* ¶ 17 (alteration, internal quotation marks, and citation omitted). Physical restraint is not required in order to meet the elements of false imprisonment. *See State v. Corneau*, 1989-NMCA-040, ¶ 12, 109 N.M. 81, 781 P.2d 1159. Rather, it can be shown by words, acts, gestures, and utterances, and "[t]he restraint need be for only a brief [amount of] time." *Id.* While most acts of CSP may involve false imprisonment, the facts in a particular situation could support a finding that a distinct act of false imprisonment occurred prior to the act of forcible intercourse, and a jury could determine that the act of false imprisonment was separate and apart from any false imprisonment involved in the act of CSP. *Id.* ¶ 11.

**{9}**     As explained below, based on the evidence presented in this case, the jury could determine that the conduct underlying the false imprisonment conviction was separate and distinct from the conduct underlying the CSP conviction. False imprisonment consists of "intentionally confining or restraining another person" without their consent

and without authority to do so. Section 30-4-3. Criminal sexual penetration in the second degree is the unlawful and intentional causing of penetration, to any extent and with any object, of the genital or anal openings of another by the use of force or coercion that results in personal injury to the victim. *See* § 30-9-11(A), (E).

**{10}** With respect to the offense of false imprisonment, Defendant initially attempted to coerce and intimidate Victim into having sex with him. Defendant blamed Victim for the broken gate; Defendant told Victim the neighbors thought she was a whore; Defendant threatened to evict Victim if she refused; Defendant leaned into the door to kiss Victim; Defendant swung open the door and advanced toward Victim causing her to back up; Defendant blocked Victim's attempt to escape into another room; and then Defendant engaged the deadbolt on the door. During this time, Victim tried to bargain with Defendant by offering to pay for the broken gate, and telling him she did not want to be evicted but she did not want to have sex with him. Victim testified that she was very afraid. At that point, with Defendant having unsuccessfully used threats and coercive tactics to convince Victim to have consensual sex with him, and having prevented her escape by locking the door and confining her without her consent, all elements of false imprisonment were met. *See Corneau*, 1989-NMCA-040, ¶ 13 (concluding that the defendant's acts of threatening the victim, and then dragging her from the living room to the bedroom where the CSP occurred, satisfied the elements of false imprisonment); *State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227 (determining conduct is not unitary "when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime").

**{11}** After Defendant confined Victim to the bedroom, and when coercion and threats did not work to convince Victim to voluntarily have sex with him, Defendant switched from threats to the use of physical force. Defendant violently threw Victim down onto the bed, attempted to force her legs apart, touched her breasts, and attempted to put his hands down her shorts. He ignored her pleas and commanded her to get a condom or he would kill her, and pulled down her shorts and forcefully penetrated her. He then penetrated her with his thumb. Defendant's coercive acts and threatening words and utterances that established the offense of false imprisonment were separate and distinct from the violent and physical force used to commit CSP. We conclude that, based on the evidence, the offenses of false imprisonment and CSP were not based on unitary conduct. Thus our inquiry ends and we conclude that Defendant's convictions for CSP and false imprisonment do not violate double jeopardy. *See Silvas*, 2015-NMSC-006, ¶ 9.

## II.    Prosecutorial Misconduct

**{12}** Defendant claims that the prosecutor in this case made certain comments and engaged in certain actions that impermissibly affected the jury and deprived him of a fair trial. Defendant first claims the prosecutor wore a large Native American necklace, displayed an obsidian arrowhead to the jury, and expressed solidarity with Native Americans in order to garner sympathy for Victim and for "the plight of Native Americans." Defendant opines that these actions were designed to convince the jury to

"decide based on their sympathies for Native Americans." Defendant states that he "objected to the [State's] use of the arrowhead" during the State's closing argument. Based on the tape citation relied on by Defendant, it appears that his objection was overruled. Defendant provides no details concerning the legal basis for his objection, any arguments he made in favor of it, or any reasons given for the trial court's ruling.

{13}    Assuming the issue is preserved, Defendant does not identify any "distinctive constitutional protection" implicated by the prosecutor's statements. *See State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348. The challenged statements were isolated within more than forty-five minutes of closing argument. *Id.* Defendant's view is that the prosecutor improperly sought the jury's sympathy by referencing the Native American heritage of Victim and her father. The jury, however, was instructed to rely on the evidence and that "[n]either sympathy nor prejudice should influence [the] verdict." While the statements may have been improper, we decline to determine that the jury ignored this instruction and that "all the safeguards at the trial level have failed," *see id.* ¶ 25, based on the prosecutor's indirect statements intermittently made during closing argument.

{14}    Defendant also complains about other comments made by the prosecutor during closing argument. The prosecutor referred to Victim as "our" client," suggested that Defendant "revictimized" Victim by cross-examining Victim about evidence of which Defendant was already aware, and impermissibly attempted to elicit sympathy from the jury by referring to Victim's cultural heritage. Defendant objected to these comments. The trial court sustained Defendant's objections, and cautioned the prosecutor to focus on the evidence and not on defense counsel. Defendant did not ask for a curative instruction and did not move for mistrial. *Cf. State v. Armijo*, 2014-NMCA-013, ¶¶ 9-10, 316 P.3d 902 (explaining that generally a prompt curative instruction cures any potential prejudice from inadmissible testimony intentionally elicited by the prosecutor); *see also State v. Sandoval*, 1975-NMCA-096, ¶ 4, 88 N.M. 267, 539 P.2d 1029 (finding that a district court does not err by refusing to give a curative instruction in the absence of such a request).

{15}    Defendant insists that the prosecutor's behavior resulted in fundamental error in that it was "so egregious" and had such a prejudicial effect on the verdict that he was denied his right to a fair trial. We note that the State "does not dispute that the prosecutor's comments were improper" but insists that they do not rise to the level of prosecutorial misconduct that would support a finding of fundamental error. Although we are not bound by the State's concession, we agree many of the prosecutor's comments and actions may have been irrelevant and/or improper. *See State v. Martinez*, 1999-NMSC-018, ¶ 26, 979 P.2d 718 (stating that the appellate courts "are not bound by the [state]'s concession of an issue in a criminal appeal").

{16}    "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. Fundamental error in a criminal case applies only for protection of those whose innocence seems indisputable and where the question of the

defendant's guilt is so doubtful as to shock the conscience if the conviction is allowed to stand. *See State v. Orosco*, 1992-NMSC-006, ¶¶ 12-13, 113 N.M. 780, 833 P.2d 1146. An error can "shock the conscience" in one of two ways, either: (1) because of "the obvious innocence of the defendant," *see Barber*, 2004-NMSC-019, ¶ 16, or (2) because "a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Id.* ¶ 17.

**{17}**    In this case, based on the evidence, it is clear that Defendant was not obviously innocent. Therefore, the first prong of the *Orosco* test is not met. In addition, as noted above, many of Defendant's objections were sustained, and he did not ask for further curative instructions. As observed by the State, an appeal to the jury's sympathy for a victim, although improper, does not rise to the level of fundamental error. *See State v. Baca*, 1997-NMSC-059, ¶ 55, 124 N.M. 333, 950 P.2d 776, *abrogated by State v. Revels*, 2025-NMSC-021, ¶ 37, 572 P.3d 974. The errors pointed to by Defendant do not indicate that the *Orosco* standard was met in this case, and therefore, Defendant's claim of fundamental error fails.

### III.    *Miranda* Rights

**{18}**    Defendant claims that, because his *Miranda* rights were read to him in English, he did not understand what was said, why he was placed under arrest, or that he was being accused of a criminal act. Defendant states that he thought that he was only being questioned about a sexual affair. Therefore, his post-*Miranda* statements should have been suppressed. Defendant did not file a timely pretrial motion to suppress his statements and did not claim that his waiver was invalid. Defendant did file an untimely motion in limine, and, on the fourth day of trial, asked the trial court to review the arrest video to determine whether he properly waived his *Miranda* rights.[1] Despite Defendant's failure to file a timely suppression motion, the trial court watched the video of Defendant's arrest, and found that Defendant had voluntarily waived his *Miranda* rights. The court determined that the waiver of *Miranda* rights was given knowingly, intelligently, and voluntarily.

**{19}**    On appeal, Defendant claims that he is a Mexican national and he did not understand the *Miranda* rights that were read to him in English. He claims that he used an interpreter at trial and relied on assistance from his daughter because his English is "not that good." Defendant also asserts that he did not understand that the officer was questioning him about sexual conduct between himself and Victim. In order to address Defendant's claim, we have reviewed the video contained in State's Exhibit 17. *See State v. Martinez*, 2015-NMCA-051, ¶ 15, 348 P.3d 1022 (holding that appellate court review of a video is similar to reviewing any other documentary evidence, and the appellate court is in as good a position as the trial court to interpret the contents of the video), *rev'd on other grounds*, 2018-NMSC-007, 410 P.3d 186.

---

1Unlike the argument he asserts on appeal, Defendant did not argue a language barrier rendered his waiver of his *Miranda* rights invalid.

**{20}**   Our review of the video reveals that, after Defendant was placed in handcuffs, he was told he was under arrest for an incident involving Victim. Defendant spoke in English asking the officer what happened. The officer did not respond, but proceeded to read Defendant his *Miranda* rights in English. When he was finished, he asked Defendant if he understood his *Miranda* rights as explained, and Defendant responded, "Yes." The officer asked Defendant, with those *Miranda* rights in mind, if he wished to talk to the officer. Defendant responded, "Yes. Definitely." Defendant spoke in English during the entire encounter, and his responses to the officer's questions demonstrate that he understood everything that was being asked. Throughout the video of the encounter with the officer, Defendant answered questions posed to him in English without hesitation, and responded to those questions in English at length and in great detail.

**{21}**   Whether Defendant waived his *Miranda* rights prior to questioning is a mixed question of law and fact. *See Aguilar v. State*, 1988-NMSC-004, ¶ 31, 106 N.M. 798, 751 P.2d 178. We look at whether the trial court's findings were supported by substantial evidence. *See State v. Barrera*, 2001-NMSC-014, ¶ 23, 22 P.3d 1177. We also review de novo, whether based on the totality of the circumstances, a waiver under *Miranda* was knowing, intelligent, and voluntary. *See id.* Our review of the video convinces us as a factual and legal matter that the standard was met. We affirm the trial court's determination that Defendant's *Miranda* rights were not violated.

## IV.   Voir Dire

**{22}**   Defendant maintains that he did not receive a fair trial because he was unable to properly conduct voir dire and one for-cause challenge was improperly denied. Defendant insists that he needed more time to gather demographic information and clarification of the jurors' questionnaires because they were incomplete. Defendant was allowed a for-cause challenge for Panelist No. 40 who worked for Community Against Violence (CAV). Defendant contends that the denial of his for-cause challenge for Panelist No. 44, who also worked for CAV was "suspect" and "prejudicial." We disagree.

**{23}**   Our review of the voir dire transcript reveals that when defense counsel asked Panelist No. 44, who was an administrative assistant for CAV, to agree this case might not be a good case for her to sit on because her position might affect her impartiality to view the facts, Panelist No. 44 responded, "I don't think so." She continued, "I work in the administration part, so I don't have knowledge of the other part of that." In addition, in denying the motion to strike Panelist No. 44 for cause, the district court explained that it had also heard Panelist No. 40 say perhaps the case was not for her but did not hear Panelist No. 44 say that.

**{24}**   Defendant contends that because the district court denied his for-cause challenge to excuse Panelist No. 44 he was required to use his last peremptory to excuse Panelist No. 44, which in turn forced him to accept Panelist No. 43, even though he did not have an opportunity to question that Panelist due to the restrictions on time for voir dire. However the transcript reveals that Defendant could not have used a

peremptory challenge to excuse Panelist No. 44. Rather Defendant used his fifth peremptory challenge on Panelist No. 32, and when given another strike to use during selection of alternate jurors, Defendant used the strike on Panelist No. 41. Based on the record below, Panelist No. 44 was not included in the final jury panel. Panelist No. 43 was chosen as the final alternate juror. However, according to the State, Panelist No. 43 was later asked to join the main jury panel.

**{25}** To show reversible error, Defendant must demonstrate that the trial court abused its discretion by refusing to excuse the jury panelist. Defendant does not provide information to show that any member of the final jury panel was biased, including Panelist No. 43. *See State v. Romero*, 2023-NMSC-014, ¶¶ 9-15, 533 P.3d 735 (describing the forms of bias and the manner of proving them). Although Defendant claims that Panelist No. 44's employment with the same organization as that of a witness, along with the trial court's denial of Defendant's challenge of her, was "suspect and prejudicial," Defendant's claim of prejudice is based on conjecture and speculation. *See State v. Padilla*, 1998-NMCA-088, ¶ 14, 125 N.M. 665, 964 P.2d 829 (noting that prejudice remains speculative "unless there is an appreciable risk that the jury convicted the defendant for illegitimate reasons"). Nor does Defendant suggest that he had questions he wanted to ask Panelist No. 43 in voir dire but could not ask because of time pressure.

**{26}** Moreover, a district court has broad discretion in its handling of voir dire, including limiting the time the parties are given to conduct voir dire. *See State v. Martinez*, 2002-NMCA-036, ¶¶ 31-33, 131 N.M. 746, 42 P.3d 851 (holding that the trial court did not abuse its discretion by limiting the time for conducting voir dire to fifteen minutes per side). Reversal is not warranted unless the district court's conduct with respect to voir dire resulted in prejudice to Defendant. *See State v. Fernandez*, 1994-NMCA-056, ¶ 13, 117 N.M. 673, 875 P.2d 1104 (recognizing that a restriction on a party's voir dire by the court will not constitute reversible error unless the defendant shows he was prejudiced by the restriction). Defendant has failed to demonstrate that the voir dire time limits were unfair or prejudicial to his case. *Cf. State v. Malloy*, 2001-NMCA-067, ¶ 21, 131 N.M. 222, 34 P.3d 611 (stating that a "[m]ere assertion of prejudice is not a showing of prejudice"). We note that the State conducted voir dire in sixteen minutes while Defendant was allotted 108 minutes to complete examination of the panel. Absent a showing of actual prejudice, there can be no reversible error. *State v. Romero*, 2019-NMSC-007, ¶ 10, 435 P.3d 1231.

**{27}** We find no abuse of discretion by the trial court.

## V. Ineffective Assistance of Counsel

**{28}** Defendant claims his trial counsel was ineffective. Defendant refers to an affidavit from trial counsel filed as "Errata to Exhibit A" to the docketing statement. The affidavit was not presented to the trial court or included in the record proper, and therefore, is not part of the record on appeal. *See State v. Crocco*, 2014-NMSC-016, ¶¶ 14-15, 327 P.3d 1068. This Court will consider only facts that are part of the trial record. *State v. Morgan*,

2016-NMCA-089, ¶ 17, 382 P.3d 981. If the facts necessary to decide the question are not part of the record, the claim is more properly brought via a petition for habeas corpus. *Id.* Therefore, we do not consider the document or its contents. In addition, we do not consider any contentions made by Defendant on appeal that were not supported by facts included in the record.

**{29}** For a claim of ineffective assistance of counsel raised for the first time on appeal, a defendant must establish a prima facie case justifying remand to the district court for a hearing. *See State v. Astorga*, 2015-NMSC-007, ¶ 17, 343 P.3d 1245. To do so in this case, Defendant is required to show that: (1) counsel's performance fell below that of a reasonably competent attorney; and (2) counsel's conduct was prejudicial to Defendant. *See id.* We recognize a strong presumption that counsel's conduct was reasonable. *State v. Paredez*, 2004-NMSC-036, ¶ 14, 136 N.M. 533, 101 P.3d 799. Moreover, we will not second-guess counsel's trial strategy and tactics. *See Lytle v. Jordan*, 2001-NMSC-016, ¶ 43, 130 N.M. 198, 22 P.3d 666.

**{30}** According to Defendant, his trial counsel did not conduct pretrial interviews of any witnesses, including Victim and should have subpoenaed Victim's cell phone as well as her medical records. Defendant also claims counsel failed to use documents that counsel received just prior to trial and filed an untimely motion in limine regarding suppression of statements made by Defendant during his arrest. Defendant claims his theory of the case was complex, and speculates that as a result of his counsel's actions, he was deprived of "adequate preparation of trial, . . . [and] had no basis to impeach the witness."

**{31}** Our review of the transcript reveals that Defendant's first counsel, Angela Arrellanes conducted pretrial interviews of Victim and her father, and that Defendant's trial counsel utilized the content of those pretrial interviews during cross-examination of Victim and her father. Defendant has not provided any information indicating what evidence he could have revealed by engaging in additional discovery, or by interviewing Victim more thoroughly prior to trial, or from access to Victim's cell phone or medical records. Furthermore, as pointed out by the State, the evidence presented at trial included a pretrial police interview of Victim as well as relevant text messages between Defendant and Victim. Defendant cannot establish any prejudice he incurred as a result of these general assertions.

**{32}** Finally, counsel's failure to file a timely motion to suppress did not prejudice Defendant in any way. The district court reviewed the late motion and indicated that most of the issues could be resolved during trial. As previously discussed, the district court specifically addressed the merits of Defendant's *Miranda* claim pursuant to the untimely motion in limine filed by trial counsel. We have already ruled that Defendant's *Miranda* claim was groundless, making any procedural defect connected to that claim irrelevant to Defendant's case. All of Defendant's complaints about trial counsel's performance are either only vaguely asserted or are based on information that is not part of the record. We therefore hold that Defendant has failed to make a prima facie

showing that counsel's performance fell below that of a reasonably effective attorney. *See Astorga*, 2015-NMSC-007, ¶ 17.

**{33}** Furthermore, as stated in part above, Defendant has failed to satisfy the prejudice prong of a prima facie case; he has not shown that there is a reasonable probability that the outcome at trial would have been different, but for defense counsel's alleged failures. *See State v. Cordova*, 2014-NMCA-081, ¶¶ 9-10, 331 P.3d 980 (holding that, with no specific evidence about what information would have been uncovered by additional investigation, it is not possible to conclude that, but for counsel's performance, the outcome at trial would have been different). The evidence in favor of the verdict was strong, and Defendant has not provided any specific information indicating how his defense would have been enhanced if trial counsel had done all the things Defendant now claims he should have done. In other words, there has been no prima facie showing of prejudice to Defendant. *See State v. Brazeal*, 1990-NMCA-010, ¶ 23, 109 N.M. 752, 790 P.2d 1033 (stating that where a defendant has not shown that, but for his counsel's actions, the result at trial would have been different, the element of prejudice is not met).

**CONCLUSION**

**{34}** For the foregoing reasons, we affirm Defendant's convictions.

**{35}** **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KATHERINE A. WRAY, Judge**